IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIAM ALDWIN JONES, #194933 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACT. NO. 2:04-cv-01029-MHT |
| ) | |
| DANNY RIEBEN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. Introduction**

Music plays an important role in religious life. *See* PHILIP V. BOHLMAN, MUSIC IN AMERICAN RELIGIOUS EXPERIENCE (2005). It is important to the plaintiff who, at the time he filed this lawsuit, was in the custody of the Alabama Department of Corrections and incarcerated at the Ventress Correctional Facility.[1] Jones complains that the defendants deprived him of his rights because they interfered with his making music as part of religious ceremonies conducted in the prison. "I've been denied the right to freely exercise my music ministry within the chapel during regular service." (Pl.'s Compl. at 2) The defendants named by Jones are Chaplains Danny Rieben and Steve Walker and Warden J.C. Jiles. Jones seeks $7,000,000.00 in compensation and asks that Chaplain Rieben be reevaluated as a Alabama Department of Corrections' chaplain. The court has jurisdiction of Jones' claims pursuant to its federal question jurisdiction. 18 U.S.C. § 1331, 1343(3).

---

[1] In January 2008, the plaintiff filed a change of address which indicates he has been released.

In response to the orders of the court, the defendants filed a special report, a supplemental amended special report and answer. The court then informed the parties that the defendants' special report, as amended, may, at any time, be treated as a motion for summary judgment, and the court explained to the plaintiff the proper manner in which to respond to a motion for summary judgment. The plaintiff has filed his response, and this case is now before the court for consideration of the defendants' motion for summary judgment which the court concludes is due to be granted as a matter of law.

## II. The Summary Judgment Standard

Under FED.R.CIV.P. 56(c) summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.*

---

[2] In *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986), the court stated:

> "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue...Rule 56(e)...requires the nonmoving party to go beyond the pleadings and by...affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial...We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment...Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves. . .

*Id.* at 324.

at 323.  The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.  If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also* FED.R.CIV.P. 56(e).  ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial.").  What is material is determined by the substantive law applicable to the case.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248 (1986).  The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment.  *Anderson*, 477 U.S. at 257.  If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant.  *See Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995)*; Peppers v. Coates*, 887 F.2d 1493 (11th Cir. 1989).  However, *evidence* presented by the nonmovant must be believed and all justifiable inferences must be drawn in favor of the

nonmovant.[3]  *Anderson*, 477 U.S. at 255.  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c).

### III.  The Facts[4]

In January 2004 Jones, referring to himself as Jones-El, and another inmate, Watts-El, expressed a desire to assist adherents of the Moorish Science Temple ("MST") by singing accompanied with live music performed at MST religious services.  This is how Jones states what happened.

> Around January 2004, defendant Rieben allowed us to use the acoustic guitar during our weekly service.  Around the later (sic) part of March 2004, approximately two and one half (2 ½) months after the time we started using the acoustic guitar he granted us permission to used (sic) the electric guitar. Still Watts-El and I were the only two people using the musical instruments. The problem started when the Praise team (whom all are Christian singers and musicians) were invited to one of our Friday holy day service on April 9, 2004, in order to demonstrate an A & R selection with music, singing and dancing. When defendant Rieben came to work the following day, which was Saturday he received words on what happened on Friday.  He then became very angry with both moslems (sic) and the christian's (sic) brothers who attended our service. He made threats to the christians.  (sic)  He told them if they ever play in another one of our service they will all be barred from the Praise team. During this same time, he locked all the musical equipment down.

---

[3]  "[W]hat is considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes."  *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

[4]  Of course, at the summary judgment stage  this court must view the facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).  The recitation of the facts at this point deals primarily with the issue related to restriction of Jones' music playing.  There are several other issues he raises; the court will integrate discussion of the facts related to those issues in its discussion and application of the law.

(Pl.'s Aff. to Response in Opposition, doc. # 21 at 2)

When Jones first asked Rieben about playing music during an MST service, Rieben understood from chapel guidelines that the MST did not have a requirement for music during worship. (Rieben Aff., doc. # 17 at 7). After conferring with Steve Walker, the Chaplain Coordinator, Rieben allowed the music. (*Id.*). "I allowed them to use the instruments several times with no problems, and then they began to put men on the instruments that were not listed on the Moors Science Temple group." (*Id.* at 8). In one of their submissions, the defendants argue that this commingling of inmates of different faiths "created the possibility of an institutional security issue."[5] (Am. Special Report, doc. # 42 at 3).

This concern apparently led Rieben to prohibit MST use of musical instruments for a period of several months while the issue was under consideration by the Alabama Department of Corrections' Religious Activities Review Committee. (Rieben Aff., doc. # 17 at 8). The Committee ultimately decided that each institution should decide the issue for itself. After consulting with Walker, Rieben decided that the MST could use instruments "a couple of times a month." (*Id.* at 10). About this same time, Rieben wrote a memorandum

---

[5] Prison officials' separation of inmates based on group characteristics such as race which might cause strife between those groups is certainly not uncommon but in some circumstances is unlawful. *See e.g., Lee v. Washington,* 390 U.S. 333 (1968) (Alabama's racially segregated prisons unconstitutional), and *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (Characterizing *Lee* as holding racial segregation in prisons unconstitutional "save for 'the necessities of prison security and discipline.'") With respect to religion, the Framers of the Constitution understood well the relationship between social instability and groups with competing religious views. *See e.g. Engel v. Vitale*, 370 U.S. 421, 429 (1962) ("[A]nguish, hardship and bitter strife . . . [can] come when zealous religious groups struggl[e] with one another to obtain the Government's stamp of approval . . .'). While the First Amendment is concerned with minimizing that strife by forbidding state sponsored or endorsed religion, the underlying message about religious conflict potentially leading to strife remains true.

for publication in the prison newsletter.

> Since every approved religious service IN THE CHAPEL has access to the things in the chapel (musical instruments) during the service, but general population does not have the same access.
>
> I am requiring all men play the instruments for any service to have the group presented at that service listed as their religious preference in their institutional jacket. I must be notified three (3) working days prior to a new musician being scheduled to play to clear them thru their jacket. According to chapel guidelines everyone's religious preference can be changed in their jacket thru the chaplain's office.

(Attach., Memorandum, doc. # 21 at 16).

Jones was not satisfied with this resolution of the dispute because it still placed restrictions on when music could accompany the MST services, and it prevented him from presenting music during services of other religious groups. (Pl.'s Aff. to Response in Opposition, doc. # 21 at 4-5). "But when it comes to me singing and playing music when I'm invited to a nonmember program, it is definitely a no no. This is my way of exercising my five senses according to the First Amendment." *(Id.* at 5).

## IV. Discussion of the Issues

**A. The Nature of Jones' Claims.**[6] At the outset of this Recommendation, the court shied away from stating definitively the legal basis for Jones' claims. In his complaint, Jones does not identify the source of the rights he claims the defendants violated. In his affidavit filed in response to the defendants' special report (doc. # 21), Jones relies on the First

---

[6] In the various documents which Jones has filed, he complains that Chaplain Rieben is causing "religious controversy" within MST. The court does not construe this as a separate claim but merely a characterization of the effect of the various actions of Rieben about which Jones specifically complains.

6

Amendment as the basis for his claims.[7]  Jones does not mention the provisions of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc et seq. ("RLUIPA").  Under the provisions of 42 U.S.C. § 2000cc-1

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person --
>
>  (1) is in furtherance of a compelling governmental interest;  and
>
>  (2) is the least restrictive means of furthering that compelling governmental interest.

Unquestionably, pleadings filed by pro se litigants are entitled to a liberal construction.  *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (per curiam).  While that liberality has its limits, *see GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), it is certainly appropriate for a court to recast pro se characterizations of claims in a way which properly represents the substance of a litigant's claims.  *Cf. Castro v. United States*, 540 U.S. 375, 381-82 (2003).  Jones' complaint should be read to state a claim under the Religious Land Use and Institutionalized Persons Act of 2000 because he is complaining about what he as an institutionalized person contends are burdens placed on his exercise of religion.  Recasting of Jones' complaint is even more appropriate in this case given that in *Smith v. Allen*, 502 F.3d 1255 (2007), *reh'g denied and reh'g en banc denied*, ___ F.3d ___ (11th Cir. Mar. 3, 2008), the court said that

---

[7] Of course, Jones does not mention 28 U.S.C. §§ 1331, 1343(3) or 42 U.S.C. § 1983, but in considering prisoner complaints, courts universally, liberally assume reliance on these statutes.

> [i]f a prison's regulation passes muster under RLUIPA, however, it will perforce satisfy the requirements of the First Amendment, since RLUIPA offers greater protection to religious exercise than the First Amendment offers. *See Charles v. Frank*, 101 Fed.Appx. 634, 635 (7th Cir. 2004) (per curiam).

*Id*. at 1264 n. 5.

Construing Jones' complaint as raising RLUIPA claims enables the court to exercise appropriate judicial restraint by avoiding "reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988). If the defendants' actions pass muster under RLUIPA, then the court will not have to address at all the constitutional questions posed by Jones. *Smith,* 502 F.3d at 1264 n. 5.

**B. Some Conclusions About the Available Relief Under RLUIPA.** As noted at the outset of this recommendation, Jones has sued three state officials. Jones does not indicate whether he sues them in their individual or official capacities or both, but that is of no moment. RLUIPA does not create a private right of action for damages against individual defendants. *Smith,* 502 F.3d at 1275 (Individual damage suits against governmental officials inconsistent with Congress' Spending Power authority).

Jones also seeks injunctive relief. The record before the court shows that he has been released from confinement in an Alabama Department of Corrections' facility. Thus, his claims for injunctive relief are moot. *See Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (Inmate's § 1983 claims for injunctive or declaratory relief are moot once the inmate has been transferred).

8

Under RLUIPA, an aggrieved party may seek appropriate relief which in this case allows damages against the defendants only in their official capacities. *Smith,* 502 F.3d at 1275. *See also Benning v. Ga.,* 391 F.3d 1299, 1305-06 (11th Cir. 2004) (RLUIPA effectuates waiver of a state's sovereign immunity). Thus, if Jones is entitled to any relief, it is solely the "appropriate relief"[8] of damages against the named defendants in their official capacities.

**C. Restrictions on Use of Music During MST Worship.** To succeed on his primary RLUIPA claim,[9] Jones first must present a *prima facie* case.

> To establish a prima facie case under section 3 of RLUIPA, a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened . . . The plaintiff "bear[s] the burden of persuasion on whether the . . . government practice that is challenged by the claim substantially burdens the exercise of religion." . . . If the plaintiff succeeds in demonstrating a prima facie case, the government must then demonstrate that the challenged government action is "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." . . . In contrast, if the

---

[8] *See* 42 U.S.C. § 2000cc-2.

[9] In his submissions, Jones alleges that the MST was treated differently than other religious groups because those groups were allowed to use music and sing. The facts belie this claim. The MST was allowed to have music until inmates from other religions began performing at the MST services. There was a temporary prohibition in place until the question was resolved; then music was allowed. The temporary suspension of music playing cannot be construed under the facts of this case as significantly hampering the MST religious practice. *See,e.g., Berryman v. Granholm*, __ F.Supp.2d ___, 2007 WL 2259334, *3 (E.D.Mich., 2007).

But more to the point, Jones has failed to show any facts which a reasonable jury could conclude that the defendants' actions were purposefully discriminatory. *See Foy v. Holston*, 94 F.3d 1528, 1533 (11th Cir. 1996). At best, Jones has shown that for a few months the MST was not allowed to play music while other religions could play music. But the defendants have shown that the cessation was necessary to allow them to determine whether music was appropriately part of MST ceremonies. In response to that showing of nondiscrimination, Jones has failed to come forward with evidence of any discriminatory purpose based on his religion.

>plaintiff fails to present evidence to support a prima facie case under RLUIPA, the court need not inquire into whether the governmental interest at stake was compelling.

*Smith,* 502 F.3d at 1276 (citations omitted).

Jones contends that the challenged actions of the defendants burdened his right to freely exercise his "music ministry" within the prison chapel in conjunction with the MST religious services. The first question for the court is whether Jones has demonstrated he was engaged in a "religious exercise." The short answer to that question is "yes." However, that short answer belies the more fundamental question of what is the religious exercise at issue. In *Smith*, the court defined the plaintiff's "religious exercise" as the practice of Odinism. "[W]e conclude that Smith's practice of Odinism constitutes a 'religious exercise' for purposes of a RLUIPA claim." *Id.* at 1277. One of the primary disputes that gave rise to the challenge in *Smith* was prison officials' prohibition against Smith possessing a quartz crystal which he claimed was necessary for him to practice Odinism. The *Smith* court did not cabin the definition of "religious exercise" in a way which focused on a particular action of worship; rather, the court defined "religious exercise" as constituting the broader practice of a religion. It follows from *Smith* in which the "religious exercise" was Odinism that in this case the "religious exercise" is the practice of the MST. Jones has met the first prong of his *prima facie* case; he was engaged in that practice.[10]

---

[10] Jones also complains about Rieben's prohibiting him (and others) from playing music during religious services of other religions because he is not a declared member of those religious group. Jones suggests that this impairs his ability to function as a "minister of music." Being a self-described minister of music is not a "religious exercise" within the meaning of RLUIPA. Music untethered from any religion or
(continued...)

10

Jones' claims concerning music falter on the "substantial burden" aspect of his *prima facie* case. The *Smith* court said this about "substantial burden."

> We have previously defined a "substantial burden" as being "significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." More pertinent to the present action, we have made clear that, in order to constitute a "substantial burden" on religious practice, the government's action must be "more than . . . incidental" and "must place more than an inconvenience on religious exercise." That is, to constitute a substantial burden under RLUIPA, the governmental action must significantly hamper one's religious practice.

*Smith,* 502 F.3d at 1277 (citations omitted).

As *Smith* shows, the question of whether a challenged action constitutes a substantial burden must be determined from the record as a whole and not merely by reference to the specific official action Jones complains about. *Id.* Here, Rieben initially questioned the incorporation of music into the MST ceremonies but did allow augmentation of the services with the requested music and use of instruments. Rieben withdrew his permission only after inmates who were not MST members were brought in to and did play during the MST services. Thereafter, Rieben sought review of the question by the Alabama Department of Corrections' Religious Activities Review Committee. That committee ultimately allowed each institution to determine the question for itself, and Rieben again allowed some limited use of music but prohibited interaction between inmates of different faiths. The point of this discussion is to demonstrate that Rieben's actions were deliberate and considered. Moreover,

---

[10](...continued)
tethered to every religion is not a "religious exercise."

at the same time, Chaplain Walker was seeking information about the MST practices. A letter from an MST minister, Brother R. McDowell Bey, to Walker is informative. In describing a January 8 celebration of an MST revered prophet, Brother Bey stated, "Other community socialization may entail some dancing or music . . . Our members' request for music, dancing, and family members is up to the policy of the institution and the security level of the institution." (Attach., Bey Letter, doc. # 42-3 at 4). Brother Bey's description of the place of music within MST celebrations demonstrates that music is not fundamental to the MST religious practice, and, therefore, the court cannot conclude that restrictions on the use of music during the MST ceremonies significantly hampered Jones' religious exercise. *Smith*, 502 F.3d at 1278 (Denial of crystal neither "fundamental to" nor "significantly hamper[s]" religious observance).

Jones has presented no evidence showing that limiting music during the MST worship activities is anything more than an inconvenience or incidental burden. Indeed, the totality of the evidence before the court – Brother Bey's letter in particular – shows that subordinating music during MST worship to the needs of the prison institution does not significantly hamper MST religious practice. This conclusion is entirely consistent with the Supreme Court's view of RLUIPA. "We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests." *Cutter v. Wilkinson,* 544 U.S. 709, 722 (2005). In short, Jones has failed to show that the limitations placed on his use of music for the MST services is a

"substantial burden" within the meaning of RLUIPA.

**D. The Coercion Claim.** When Jones first began playing music at the MST worship services, he was not an adherent of the MST. After Rieben published the memorandum which prohibited Jones from playing music for any religious group of which he was not a member, he became an MST member. Jones alleges that Rieben violated his rights because Rieben "absolutely forced me to join Moorish Science when he typed this new memorandum."[11] Even when construing the facts in favor of Jones,[12] his characterization of the memorandum as forcing him to act in a certain way cannot stand. The memorandum is a prohibition of general application relating to all inmates and all religions, but it requires no action on the part of any inmate.

That said, it is still possible that Rieben's memorandum can be construed in a way which runs afoul of the "unconstitutional conditions" doctrine which holds that the government "'may not deny a benefit to a person on a basis that infringes his constitutionally protected ... [rights]' even if he has no entitlement to that benefit." *Bd. of County Com'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 674 (1996) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)).

---

[11] In the unsworn document "Facts Supporting All Three Grounds" accompanying his complaint Jones says, "I'm a Christian, and I (as well as other Christian brothers who are members of the Christian Praise team) were invited to (MSTA) service as to perform solos. I tried pleading with the chaplain that I'm a minister of music, and my ministry requires me to minister to all God's children no matter what religion they are, so we were all told by the chaplain, in order to minister to the Moslems with live music, we all would have to change our religious preference from Christian to Moslems."

[12] Thus, even though Jones never says that he did not want to join the MST, the court will assume for purposes of summary judgment that he did not want to join.

> "The doctrine of unconstitutional conditions prohibits terminating benefits, though not classified as entitlements, if the termination is based on motivations that other constitutional provisions proscribe." *Adams*, 784 F.2d at 1080;[13] *accord Bourgeois*, 387 F.3d at 1324 ("This is a classic 'unconstitutional condition,' in which the government conditions receipt of a benefit or privilege on the relinquishment of a constitutional right."[14]

*Johnston v. Tampa Sports Authority,* 530 F.3d 1320, 1329 (11th Cir. 2008) (footnotes added).

The problem for Jones, however, is that the restrictions placed on his playing music did not violate his constitutional rights because those restrictions were not violative of RLUIPA. *Smith,* 502 F.3d at 1264 n. 5. In the same vein, the prohibition against playing music during ceremonies of religious groups of which he is not a declared member is entirely consistent with institutional security concerns and, therefore, not violative of RLUIPA. *Cutter,* 544 U.S. at 722. *See also Spavone v. City of New York*, 420 F.Supp.2d 236 (S.D. N.Y. 2005) (Prohibiting Catholic inmate from attending Protestant Bible study sessions not violative of RLUIPA). The prohibition was not violative of Jones' constitutional rights; therefore, he was not subject to an unconstitutional condition under which he was required to become an adherent of the MST in order to play music.

**E. The Eid Feast.** Jones complains that "Moorish Science was denied Eid Feast after Ramadan." In his response to the defendants' motion for summary judgment, Jones explains that MST of America does not follow the same customs and practices of other Islamic religions. The MST requested that they be allowed to have a separate day in January 2004

---

[13] *Adams v. James*, 784 F.2d 1077, 1080 (11th Cir. 1986)

[14] *Bourgeois v. Peters*, 387 F.3d 1303, 1324 (11th Cir. 2004).

14

for their Eid Feast, but this request was disallowed. (Doc. # 21 at 6).

Jones has come forward with no evidence showing anything other than that the 2004 denial of a separate Feast day was a one-time occurrence. Jones states in his opposition that the day on which he requested to become an MST member was April 21, 2004, long after the denial of a separate feast day. Consequently, the court concludes that Jones lacks standing to raise a claim about this denial.

Article III of the United States Constitution authorizes the courts to decide cases only where there is a justiciable case or controversy. U.S. CONST. art. III, § 2, cl. 1; *Ala. Power Co. v. U.S. Dep't of Energy*, 307 F.3d 1300, 1308 (11th Cir. 2002). Perhaps the most fundamental doctrine that has emerged from the case-or-controversy requirement is that of standing. *Allen v. Wright*, 468 U.S. 737, 750 (1984); *Ala. Power Co.*, 307 F.3d at 1308. The Supreme Court has articulated a three-part test to determine whether a party to a lawsuit has standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff must show (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision. *Id.*; *Ala. Power Co.*, 307 F.3d at 1308-09.

Jones' Eid Feast claim fails on the "injury in fact" requirement because at the time of the denial, he was not a member of the MST, and, therefore, he cannot claim that the denial caused him to personally suffer an injury. Of course, that conclusion does not answer the question of whether Jones now may bring this claim on behalf of the MST and its members.

In other words, can Jones bring the claim on the basis of third-party standing? Unfortunately for Jones, prudential principles of third-party standing give him no grounds either. To bring such a claim, Jones still must show he suffered an "injury-in-fact," thus giving him a sufficiently concrete interest in the outcome of the issue in dispute; he must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests. *Powers v. Ohio*, 499 U.S. 400, 411 (1991). Again, Jones fails to show that he suffered an injury-in-fact by the denial of the Eid Feast. In January 2004, he was a Christian, and the denial could have caused him no cognizable injury. His mere interest in the problem is insufficient to confer standing. *Sierra Club v. Morton*, 405 U.S. 727 (1972).

## V. Conclusion

The Religious Land Use and Institutionalized Persons Act of 2000 has the salutary purpose of protecting the free exercise of religion from unnecessary government interference and furthering the rehabilitation of prisoners. *Benning*, 391 F.3d at 1309-10. But Congress was "mindful of the urgency of discipline, order, safety, and security in penal institutions and anticipated that courts would apply the Act's standard with due deference to prison administrators' experience and expertise." *Cutter,* 544 U.S. at 710. Thus, RLUIPA must "be applied in an appropriately balanced way." *Id.* at 722.

On balance, the court concludes that, for all of the reasons set forth in this Recommendation, the actions of the defendants did not violate Jones' RLUIPA rights. Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendants'

motion for summary judgment be granted and that judgment be entered in favor of the defendants. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before August 26, 2008.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 13th day of August, 2008.

    /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE